**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **IBRAHIM MOHAMED ELKAHLOUT** | **CASE NO. 1:26-CV-01248 SEC P** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **CARIDAD CEPHAS KIMBROUGH, ET AL** | **MAGISTRATE JUDGE LEBLANC** |

# REPORT AND RECOMMENDATION

Currently before the court is a petition for writ of habeas corpus filed by petitioner Ibrahim Mohamed Elkahlout, through counsel, on April 16, 2026. Doc. 1. The Government filed a response on July 24, 2026. Doc. 18. The Petitioner filed a Reply. Doc. 19. The matter is ripe for review. For the reasons which follow, **IT IS RECOMMENDED** that this habeas corpus action be **GRANTED**.

## I. BACKGROUND

The Petitioner was born in Kuwait City, Kuwait, to Palestinian parents. *See* Declaration of Acting Assistant Field Office Director Justin Williams, doc. 18-1, ¶ 3. In 1992, he moved with his family to the United States. On June 16, 2005, an Immigration Judge ordered him removed to Kuwait based on criminal convictions. *Id*. at ¶¶ 8-9; *see also* Notice to Appear, doc. 18-2; *see also* Removal Order, doc. 18-3. Both parties waived appeal so the order became final that day. Doc. 18-1, ¶ 9. He was released on an Order of Supervision ("OSUP") on January 27, 2006. *Id*. at ¶ 10. According to Assistant FOD Williams' declaration submitted with the Government's Response, Petitioner's OSUP was revoked on four occasions between 2007 and 2023 due to criminal conduct. Specifically, in 2007, 2011, 2020, and 2023, Petitioner was re-detained before being sequentially placed back on supervised release. *Id*. at ¶¶ 10-19. His most current detention

occurred on December 19, 2025, when his supervised release was once again revoked. *Id*. at ¶ 20. He is presently detained at the Winn Correctional Center in Winnfield, Louisiana.

According to Assistant FOD Williams' declaration, the efforts to remove him since this recent detention are as follows:

> On February 21, 2026, ERO emailed the Removal Division at Headquarters (HQ-RIO) for assistance in requesting a travel document for the Petitioner.
>
> On March 24, 2026, ERO received a response from HQ-RIO that they were actively working with the Department of State on avenues to remove Petitioner to a third country as a Kuwaiti/ Palestinian national.
>
> On May 6, 2026, ERO emailed HQ-RIO for an update on Petitioner's third country removal. On May 8, 2026, ERO was informed that there was no update.
>
> On June 17, 2026, Petitioner's case was referred to HQ-RIO for a 180-day post order custody review.
>
> On June 25, 2026, ERO emailed HQ-RIO for an update on Petitioner's third country removal. On June 25, 2026, ERO was informed that there was no update but that as soon as a third country for removal was found, HQ-RIO would inform local ERO.
>
> As of July 23, 2026, ERO has not received information that Petitioner has been scheduled for third country removal. However, ERO is still actively working on Petitioner's removal to a third country.

*Id*. at ¶ ¶ 21-26.

Petitioner has been subjected to multiple prior detentions in 2007, 2011, 2020, and 2023, yet the Respondents were never able to remove him. At the time he filed the instant Petition, he had been detained since December 19, 2025, for approximately four months. As of the date of this Report and Recommendation, he has been detained for over eight months. Petitioner argues that his continued detention violates 8 U.S.C. § 1231(a)(6) as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not reasonably foreseeable due to the diplomatic barrier to removal that prevents his removal to Kuwait and because there is no evidence of the ability to

remove him to any unnamed third country. Under *Zadvydas* and the regulations implementing it, Petitioner asks the Court to order his immediate release under conditions of supervision.

The Government responded arguing that Petitioner's detention is both lawful and constitutional. First, Respondents assert that Petitioner's habeas petition was filed short of the expiration of the presumptively reasonable six-month period and is therefore premature. Doc. 18, p. 1. Further, they represent that "ERO has received responses to its emails concerning the removal to a third country, and efforts to find a country continue." *Id*. at pp. 1-2.

## II. LAW AND ANALYSIS

In *Zadvydas*, and the extension and application of that decision by *Clark v. Martinez,* 543 U.S. 371 (2005), to aliens who are inadmissible, the United States Supreme Court adopted a six-month period for which the institutional detention of an alien, found within the United States and ordered removed pursuant to various provisions of Section 237(a) of the Act [8 U.S.C. § 1227(a)], is presumptively reasonable, and concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699. In the words of the Court:

> In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions. And if removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period.

*Zadvydas*, 533 U.S. at 699-700.

The Supreme Court clearly indicated that the lapse of the presumptive period does not mandate release and concluded that, "[t]o the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. The United States Fifth Circuit Court of Appeals has recognized that "[t]he [Supreme] Court's decision creates no specific limits on detention, however, 'as an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future'." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006); *see also, Agyei–Kodie v. Holder*, 418 F. App'x 317, 318 (5th Cir. 2011).

Thus, in order to state a claim for relief under the *Zadvydas* decision, an alien must: 1) establish post removal order detention in excess of six months at the time of the filing of his or her petition; and 2) establish good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.*; *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thereafter, "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. To meet his burden under the second prong, an alien's claim must be supported by more than mere "speculation and conjecture." *Idowu v. Ridge*, No. 03-cv-1293, 2003 WL 21805198, *4 (N.D. Tex. Aug. 4, 2003) (citing *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002)). To shift the burden to the Government, an alien must demonstrate that "the circumstances of his status" or the existence of "particular individual barriers to his repatriation" to his country of origin are such that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* If the alien fails to come forward with an initial offer of proof, the petition is ripe for dismissal. *Akinwale*, 287 F.3d at 1051.

### *A. Length of Detention*

An alien's post-removal-period detention under 8 U.S.C. § 1231 is limited to a period reasonably necessary to bring about that alien's removal from the United States. *Zadvydas v. Davis,* 533 U.S. 678, 689 (2001). The Supreme Court has found that once the removal period begins, six months is a reasonably necessary period to remove the alien. *See id*. at 701. After six months, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. *Id*. The Government contends the instant petition is premature, and Petitioner is unable to satisfy the first prong of the *Zadvydas* analysis, because Petitioner filed the instant action short of the expiration of the presumptively reasonable six-month period. *See* doc. 1, pp. 6-7. Although Respondents are correct - Petitioner had not yet accrued six months in custody during his current period of detention at the time his petition was initially filed - he has now clearly been detained for more than six months. In any case, there is no bar on filing a habeas petition prior to the six-month mark. *See Sanchez v. Noem (Sagastizado II*), 2025 U.S. Dist. LEXIS 269065, 2025 WL 3760317, at *7, n.3 (S.D. Tex. Nov. 14, 2025) (noting that there is no "controlling precedent or legal support to indicate that six months must have elapsed at the time of filing" and concluding that the six-month period is a rebuttable not preclusive presumption); *see also Villanueva v. Tate*, 801 F. Supp. 3d 689, 702 (S.D. Tex. 2025) ("[N]othing in *Zadvydas* precludes a challenge to detention before the presumptively constitutional time period has elapsed").[1] Therefore, having surpassed the six-month presumption of reasonableness under *Zadvydas*, the analysis shifts to whether Petitioner's removal is foreseeable at present.

[1] As mentioned above, prior to the present detention, Petitioner has been subjected to multiple prior detentions totaling seventeen (17) months. That time period added to his most recent detention of nearly eight months amounts to a period of approximately twenty-five (25) months. "[T]he *Zadvydas* period is cumulative," which means Petitioner's prior

***B. Petitioner's Initial Burden***

Petitioner provides good reason to believe that there is no significant likelihood of his removal in the foreseeable future. He identifies a specific diplomatic barrier to removal, noting that although he was born in Kuwait, he was born to stateless Palestinian parents. Doc. 1-2, p. 3. Because Kuwait does not recognize birthright citizenship—requiring instead that a child's father be a Kuwaiti citizen—Kuwait classified his parents strictly as refugees. *Id*. Consequently, Petitioner possesses no legal claim to Kuwaiti nationality and remains a stateless Palestinian. As Petitioner has identified that he is not a citizen of any other country and U.S. Immigration and Customs Enforcement ("ICE") has not identified a third country that will accept him, the undersigned finds that he has met his initial burden under *Zadvydas*. *See Misirbekov v. Venegas,* No. 25-cv-168, 2025 U.S. Dist. LEXIS 166126, 2025 WL 2450991, at *1-2 (S.D. Tex. Aug. 15, 2025) (finding good reason to believe there was no significant likelihood of removal in the foreseeable future where the petitioner was granted CAT withholding from Kyrgyzstan and had no citizenship or ties to any other country); *see also Leksina v. Rice*, No. 6:25-cv-1767, 2026 U.S. Dist. LEXIS 48728 (W.D. La. Jan. 23, 2026), *report and recommendation adopted*, 2026 WL 642195 (W.D. La. Mar. 6, 2026) (finding that Petitioner met her initial burden by identifying that she is not a citizen of another country and ICE has not identified a third country that will accept her).

Furthermore, the statutory framework applies uniquely to individuals who are re-detained after a prolonged period of compliance under an Order of Supervision (OSUP). As Petitioner correctly highlights, because he was taken back into ICE custody following lengthy periods of

---

detentions and his recent re-detention must be aggregated in calculating whether the presumptive period has expired. *See Abuelhawa v. Noem*, 2025 U.S. Dist. LEXIS 203959, 2025 WL 2937692, at *4 (S.D. Tex. Oct. 16, 2025) (collecting cases).

successful supervision, the traditional six-month presumptive period established in *Zadvydas v. Davis* does not reset to day zero for the purpose of assessing the likelihood of removal. Under these specific circumstances, the government's burden to justify ongoing detention attaches much earlier—if not immediately upon re-detention—because the historical, systemic failure to secure travel documents over a 21-year period remains the operational reality. *See, e.g., Rodriguez Romero v. Ladwig,* 827 F.Supp. 3d 779, 802 (M.D. La. Feb. 6, 2026); *Balouch v. Bondi*, 2025 WL 2871914 (E.D. Tex. Oct. 9, 2025). Accordingly, the Court rejects Respondents' contention that the present Petition is premature; the statutory clock cannot be used as a shield to justify the cyclical, indefinite detention of an alien whose native country has refused repatriation for more than two decades.

***C. Respondents' Burden***

The burden thus shifts to Respondents, *Zadvydas*, 533 U.S. at 701, who provide no evidence to rebut Petitioner's claim. The conclusory statement made by Assistant FOD Williams that "ERO is actively working on Petitioner's removal to a third country," falls short. *See Rodriguez Romero v. Ladwig*, 2026 WL 321437, (M.D. La. Feb. 6, 2026) at *16 (stating that generalized "ongoing efforts to deport" to a third country are insufficient under *Zadvydas* to justify ongoing detention); *Uriostegui Rios v. Trump*, 2026 WL 810556 (W.D. La. March 24, 2026), at *2 (finding the government failed to meet its burden where "despite many requests, no country has agreed to accept [p]etitioner"); *Nuraetov v. Bondi,* No. 1:25-CV-1740, 2026 WL 878740, at *2 (W.D. La. Mar. 13, 2026) (finding that the government failed to meet its burden when there was "no affidavit, declaration, other evidence that a third country has been identified, contacted, or is considering a request from the Government to accept this petitioner and issue travel documents for his removal"), *report and recommendation adopted*, doc. 7 (W.D. La. Mar. 30, 2026); *Nguyen v.*

*Bondi*, 2025 WL 3120516, at *7 (requiring individualized evidence about the specific petitioner to demonstrate foreseeability of removal); *Marquez-Amaya v. Thompson*, No. 5:25-cv-1501, 2025 WL 3654327, at *6 (W.D. Tex. Dec. 15, 2025) (granting release where petitioner was "pending approval for removal to Mexico" with no specific removal plan in place); *Gomez-Simeon v. Bondi*, No. 25-cv-1460, 2025 WL 3470872, at *1, *5 (W.D. Tex. Nov. 24, 2025) (granting release where "Respondents have not identified a country willing to accept" the petitioner, who won CAT and finding detention not justified in the absence of "a removal plan").

To bolster its position, the Government relies heavily upon *Pataraia v. Noem,* No. 25-cv-01188, 2025 U.S. Dist. LEXIS 271131, (W.D. La. Dec. 11, 2025), *report and recommendation adopted*, 2026 WL 106385 (W.D. La. Jan. 1, 2026), in which the Court originally found that the petitioner, who had only been detained eight months under §1231, "offered no good reason to believe" that a third-country to which he could be removed would "not grant the request and issue travel documents— thereby facilitating his removal—in the reasonably foreseeable future." Doc. 18, p. 8.

At the outset, the Court notes that Respondents' reliance on *Pataraia* is fundamentally misplaced, as that case involved concrete, identifiable diplomatic efforts that are entirely absent here. In *Pataraia*, ICE actively pursued removal by applying to specific, named third nations—namely Kazakhstan, Armenia, and Azerbaijan—to secure valid travel documents. *Pataraia, supra,* at *2. By sharp contrast, the Government's declaration in this matter lacks any such specificity; it contains no named countries, no application dates, and no diplomatic track record. *See* doc. 18-1. Instead, the declaration relies entirely on an abstract, boilerplate assertion that ICE is exploring options with an unspecified "third country." *Id.* at ¶¶ 22-26. Because the Government fails to identify even a single prospective target nation, its claimed likelihood of removal remains

completely speculative and falls short of the evidentiary threshold required to rebut Petitioner's showing.

Furthermore, as the Petitioner notes in his Reply, Respondents failed to provide the full history of *Pataraia*. Attached as an exhibit to the Reply is the Court's Judgment ultimately granting the petitioner's request for release, as "ten months had passed without further word" from any of the countries identified as possible removal countries. Doc. 19-1. The Court held that "no substantive movement [had] been made to secure Petitioner's removal to a third country" and, therefore, the Court "no longer [had] reason to believe removal is imminent." *Id*.

The ultimate outcome in *Pataraia* perfectly illustrates the broader legal principle governing multi-decade delays: the longer a request for travel documents remains pending without any action by the foreign government, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *See Zadvydas*, 533 U.S. at 701; *see also Young*, 2013 U.S. Dist. LEXIS 53326, 2013 WL 1571938, at *1-2 (finding removal not reasonably foreseeable where travel document request was pending for nine months); *Fermine*, 2007 U.S. Dist. LEXIS 61516, 2007 WL 2284606, at *4 (same, fifteen months).

Under the circumstances of this case, the Court concludes that habeas relief is proper and *Zadvydas* requires Petitioner's release from his unlawful detention. The Court finds no need to address any other claim or challenge.

## III. CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the petition be **GRANTED** and Petitioner be **RELEASED**, subject to supervision under regulations prescribed by the Attorney General.[2]

---

[2] 8 U.S.C. § 1231(a)(3).

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

**THUS DONE AND SIGNED** in chambers this 28th day of August, 2026.

**THOMAS LEBLANC**
**UNITED STATES MAGISTRATE JUDGE**